# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DAMON JOSIAH HOUSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:19-cv-01901-SRC |
| | ) |
| WILLIAM D. MCKINNEY, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff Damon Josiah Houston for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 3). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $60.31. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's complaint without prejudice.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of the Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion for leave to proceed in forma pauperis, plaintiff has submitted a copy of his certified inmate account statement. (Docket No. 4). The certified inmate account statement shows an average monthly deposit of $301.57. The Court will therefore assess an initial partial filing fee of $60.31, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal

framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**The Complaint**

Plaintiff is a pro se litigant currently incarcerated at the Potosi Correctional Center (PCC) in Mineral Point, Missouri. (Docket No. 1 at 2). He brings this action pursuant to 42 U.S.C. § 1983. Five defendants are listed in the complaint: Dr. William McKinney; Warden Travis Crews; Corizon Health Care; Dr. Carl Doerhoff; and Grievance Officer R. Savage. (Docket No. 1 at 2-4). Defendants are sued in both their individual and official capacities.

Plaintiff states that on or about March 12, 2018, while at PCC, a growth known as Giant Cell Granuloma began forming on his forehead. (Docket No. 1 at 5). The growth caused him severe migraines. On March 26, 2018, he was seen by Dr. McKinney. (Docket No. 1 at 7). Plaintiff advised Dr. McKinney of the severe headaches he was experiencing, as well as a swelling behind both eyelids. According to plaintiff, Dr. McKinney told him that it was "nothing but a cyst," and that he would "drain it" if it got any bigger. At that time, Dr. McKinney did not order a biopsy or send plaintiff to get a CT scan.

On April 17, 2018, plaintiff saw an eye doctor for the swelling in both his eyelids and the pea-sized growths on his eyelids. The eye doctor told plaintiff that the swelling and growths were "most likely secondary damage from the abnormal growth on the left side of [his] forehead."

3

On April 23, 2018, plaintiff's headaches were so severe he could not work. He was also suffering blurry vision. He self-declared to receive medical attention. Plaintiff was sent to Washington County Memorial Hospital where he received a CT scan.

Two days later, plaintiff saw Dr. McKinney, who measured the growth and noticed that it had gotten larger. Plaintiff asserts that Dr. McKinney did not "drain it like he stated he would if it got bigger." Instead, plaintiff was sent back to his housing unit.

Plaintiff self-declared to medical on both April 28, 2018 and May 6, 2018, complaining about the growth on his forehead and the pain he was experiencing. On May 7, 2018, he was again seen by Dr. McKinney. Plaintiff states that Dr. McKinney "ignored [his] complaint about the pain." (Docket No. 1 at 8). However, plaintiff acknowledges that Dr. McKinney told plaintiff that he was "scheduled to see a surgeon."

On May 10, 2018, he was seen by Dr. Doerhoff through TeleMed. During the examination, Dr. Doerhoff told plaintiff that he could not see the knot on plaintiff's head. Dr. Doerhoff also told plaintiff that the droopiness in his face and his swollen eyelids were not secondary effects of the knot on his forehead.

On May 23, 2018, plaintiff went to Jefferson City and saw Dr. Doerhoff in his office to have a biopsy done. Plaintiff also went to the hospital to have an MRI.

On May 29, 2018, plaintiff went to University of Missouri Health Care to be assessed for surgery and to receive his biopsy results. The biopsy results were not cancerous. (Docket No. 1 at 9). Plaintiff had surgery to remove the growth on June 7, 2018. (Docket No. 1 at 5). The surgery took place at University of Missouri Health Care. (Docket No. 1 at 9). Following surgery, he was returned to PCC the same day, though plaintiff notes he does not know why he was not able to stay overnight.

On March 1, 2019, plaintiff went to SLU Care Medical Group for an assessment of his eyelids. He was told that he would need to have surgery to help with the droopiness by tightening the muscles.

As a result of having the Giant Cell Granuloma removed, plaintiff has a long, visible scar on his forehead. (Docket No. 1 at 11). He also had a piece of his skull removed and replaced by "a foreign substance." He states that he suffered nerve damage to the left side of his forehead, and muscle damage in both his eyelids.

Plaintiff alleges that Dr. McKinney "failed to adequately inquire into the facts necessary to make a professional judgment and treatment…in a reasonable time frame that would have prevented the damage" to plaintiff. (Docket No. 1 at 5). Likewise, he claims that Dr. Doerhoff delayed treatment by failing "to adequately inquire into the facts to make the necessary judgment for [his] treatment." (Docket No. 1 at 6). He also states that Corizon "failed to intervene" when his treatment was delayed by Dr. McKinney and Dr. Doerhoff. (Docket No. 1 at 5).

Plaintiff asserts that Warden Travis Crews "failed to intervene and review [his] IRR and Grievance in the proper time frame to prevent [his] Due Process [rights] from being violated." Similarly, he alleges that Grievance Officer Savage failed to inform Warden Crews that his Due Process rights were being violated when the response to his IRR, grievance, and grievance appeal went over the response time provided in the Offender Grievance Procedure. (Docket No. 1 at 5-6).

Plaintiff is seeking $800,000 in compensation for the damage to his skull; for the damage to the nerves on the left side of his forehead; for the chronic migraines he now suffers; and due to the fact that he has to have another surgery to repair secondary damage. (Docket No. 1 at 12).

## Discussion

Plaintiff is a pro se litigant who brings this civil action pursuant to 42 U.S.C. § 1983. He

5

alleges that his constitutional rights were violated in relation to treatment he received for a growth on his forehead. Having thoroughly reviewed and liberally construed plaintiff's complaint, and for the reasons discussed below, this action must be dismissed for failure to state a claim.

**A. Corizon Claim**

Plaintiff's claim against Corizon Health Care must be dismissed. A corporation acting under color of state law, such as Corizon, cannot be liable on a respondeat superior theory. *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to support such a claim, the plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983").

Here, plaintiff alleges that Corizon "failed to intervene when [he] was seen by [Dr. Doerhoff] through TeleMed and when the recommendation from [Dr. McKinney] was entered. Because of this "delayed" action, plaintiff asserts that he suffered preventable damage to his skull and eyelid muscles.

There are no facts in the complaint to support the contention that plaintiff was injured due to a policy, custom, or official action on the part of Corizon. Instead, plaintiff merely presents a legal conclusion, to wit: that Corizon "failed to intervene." The Court is not required to accept such a conclusion as true. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level"). Therefore, plaintiff's claim against Corizon Health Care must be dismissed.

**B. Official Capacity Claim Against Dr. McKinney**

Plaintiff's claim against Dr. McKinney in his official capacity must be dismissed. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). In order to prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

Plaintiff is alleged to be employed by Corizon Health Care. Thus, an official capacity claim against Dr. McKinney is actually a claim against Corizon itself. As discussed above, plaintiff has failed to state a claim against Corizon because he has not presented any facts showing an actionable injury caused by a Corizon policy, custom, or official action. Therefore, plaintiff's official capacity claim against Dr. McKinney must be dismissed.

**C. Official Capacity Claim Against Dr. Doerhoff**

Plaintiff's official capacity claim against Dr. Doerhoff must be dismissed. Dr. Doerhoff is alleged to be employed by CRP-Surgicare. As previously stated, an official capacity claim against an individual is actually a claim against that individual's employer. *See White*, 865 F.3d at 1075.

However, plaintiff has presented no factual allegations against CRP-Surgicare whatsoever, much less any factual allegations showing that he was injured by a CRP-Surgicare policy, custom, or official action. *See Johnson*, 452 F.3d at 973. Therefore, plaintiff has failed to state an official capacity claim against Dr. Doerhoff.

### D. Official Capacity Claims Against Warden Crews and Grievance Officer Savage

Plaintiff's official capacity claims against Warden Crews and Grievance Officer Savage must be dismissed. Warden Crews and Grievance Officer Savage are both alleged to be employed by the Missouri Department of Corrections. Thus, the official capacity claims against them are actually against the State of Missouri, their employer. *See White*, 865 F.3d at 1075.

"Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (stating that "a state is not a person for purposes of a claim for money damages under § 1983"). Because the State of Missouri is not a § 1983 person, plaintiff's official capacity claims against state employees Crews and Savage must be dismissed.

### E. Individual Capacity Claims Against Dr. McKinney and Dr. Doerhoff

Plaintiff's individual capacity claims against Dr. McKinney and Doerhoff for deliberate indifference to his medical needs must be dismissed. Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by

incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 795 (8th Cir. 2006). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

Here, plaintiff alleges that Dr. McKinney and Dr. Doerhoff both "failed to adequately inquire into the facts necessary to make a professional judgment" in order for him to receive treatment in a "reasonable time frame." Specifically, plaintiff states that Dr. McKinney misdiagnosed his Giant Cell Granuloma as a cyst. He further states that Dr. Doerhoff did not

review his medical records before assessing him through TeleMed, and later stated that the growth on his head was "cancer," without awaiting the biopsy results.

Plaintiff's allegations that Dr. McKinney and Dr. Doerhoff failed to properly diagnose him do not state a deliberate indifference claim. Rather, plaintiff appears to be asserting a claim of medical malpractice. Medical malpractice, however, is not actionable under the Eighth Amendment. *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008). *See also Kulkay*, 847 F.3d at 643 (stating that mere negligence or inadvertence does not rise to the level of deliberate indifference); *Gibson*, 433 F.3d at 646 (stating that deliberate indifference is greater than gross negligence); and *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009) ("Negligent misdiagnosis does not create a cognizable claim under § 1983").

Plaintiff has also failed to demonstrate that his treatment was intentionally delayed due to the actions of Dr. McKinney and Dr. Doerhoff. As noted above, deliberate indifference can include the intentional denial or delay of access to medical care. *See Vaughn*, 49 F.3d at 1346. However, a prison health care provider's actions must be "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson*, 756 F.3d at 1066.

Plaintiff's facts indicate that a little less than three months elapsed between the time a growth began forming on his forehead until he had the growth removed. Plaintiff does not demonstrate that this was an unreasonable amount of time. During this period, plaintiff acknowledges being seen by both doctors and nurses. He also acknowledges receiving a CT scan, a biopsy, and an MRI. He also had surgery to remove the growth. While he claims that Dr. McKinney and Dr. Doerhoff were wrong in their professional judgments, he does not establish that their actions evidenced "intentional maltreatment or a refusal to provide essential care." Indeed, plaintiff notes that upon seeing Dr. McKinney on May 7, 2018, Dr. McKinney advised

10

plaintiff he was scheduled to see a surgeon. Moreover, plaintiff notes that Dr. Doerhoff remotely assessed plaintiff on May 10, 2018, and saw plaintiff in his office on May 23, 2018, where he performed a biopsy. These facts do not show that Dr. McKinney or Dr. Doerhoff had the "highly culpable state of mind approaching actual intent" required to prove deliberate indifference. Therefore, plaintiff's individual capacity claims against Dr. McKinney and Dr. Doerhoff must be dismissed.

### F. Individual Capacity Claim Against Warden Crews

Plaintiff's individual capacity claim against Warden Crews must be dismissed. Vicarious liability is inapplicable to § 1983 suits. *Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018). As such, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). "[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995).

Here, plaintiff alleges that Warden Crews "failed to intervene and review [his] IRR and Grievance in the proper time frame to prevent [his] Due Process from being violated." In particular, plaintiff accuses Warden Crews of failing to respond in the timeframe provided by the Offender Grievance Procedure.

An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (1996). As such, "there is no constitutional liberty interest in

having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). A prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

Plaintiff does not have a liberty interest in Warden Crews timely responding to his IRR or grievance. It therefore follows that Warden Crews did not violate plaintiff's constitutional rights by allegedly failing to provide a timely response. Moreover, as explained above, plaintiff has not established that his constitutional rights were violated with regard to the medical treatment he received at PCC. Thus, Warden Crews cannot be liable for failing to intervene. For these reasons, plaintiff has failed to state an individual capacity claim against Warden Crews.

### G. Individual Capacity Claim Against Grievance Officer Savage

Plaintiff's claim against Grievance Officer Savage in his individual capacity must be dismissed. Plaintiff alleges that Grievance Officer Savage failed to inform the warden and D.O.N. Smith that his right to due process was violated when the response to his IRR, grievance, and grievance appeal went over the timeframe in the Offender Grievance Procedure. He also states that Grievance Officer Savage should not have made him do a second grievance appeal. As previously noted, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley*, 997 F.2d at 495. Grievance Officer Savage's purported failure to follow the prison grievance procedure does not have constitutional implications. Therefore,

plaintiff's individual capacity claim against Grievance Officer Savage must be dismissed.

H. **Motion to Appoint Counsel**

Plaintiff has filed a motion to appoint counsel. (Docket No. 2). The motion will be denied as this action is being dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $60.31 within twenty-one (21) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 2) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 17th day of December, 2019.

*SL R. CR*

STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE